## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

DR. LANA FOSTER,                          :
                                          :
     Plaintiff,                         :
                                          :
     v.                                 :        CASE NO.: 7:23-CV-00089 (WLS)
                                          :
ECHOLS COUNTY SCHOOL                      :
DISTRICT, *et al.*,                       :
                                          :
     Defendants.                        :
_____   :

## ORDER

Before the Court is Defendants Echols County School District ("the District"), Echols County Board of Education, Shannon King, Vincent M. Hamm, Rocky Crosby, Bo Corbett, Patricia Gray, Chad Pafford and Mitchell Church's ("Defendants") Motion to Dismiss. (Doc. 27). Therein, Defendants move to dismiss all claims against them in Plaintiff's Amended Complaint (Doc. 22) under Rule 12(b)(6) or, in the alternative, partially dismiss and strike portions of Plaintiff's Breach of Contract claims. For the reasons stated below, Defendants' Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.  RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.  Relevant Procedural Background

On August 11, 2023, Plaintiff filed the above-captioned action against Defendants. (Doc. 1). After Defendants filed their first motion to dismiss (Doc. 18), Plaintiff filed an Amended Complaint (Doc. 22), on November 21, 2023. Plaintiff's Amended Complaint alleges six (6) causes of action. Count I alleges a 42 U.S.C. § 1981 Denial of Rights claim, Count II alleges a Title VII Breach of Contract claim, Count III alleges a Georgia state-law Breach of Contract claim, Count IV alleges a Breach of the Implied Covenant of Good Faith and Fair Dealing claim ("Breach of the Implied Covenant"), Count V alleges a Breach of Third-Party Beneficiary Agreement claim and Count VI alleges a § 1981 Retaliation claim.

On December 5, 2023, Defendants filed the instant Motion to Dismiss (Doc. 27). Plaintiff filed a Response (Doc. 31) on January 8, 2024. And Defendants filed a Reply (Doc.

35) on February 19, 2024. All the Parties' respective briefs are submitted, and the motion is ripe for ruling

**B. Relevant Factual Background**

The instant action is the latest salvo in ongoing litigation, which began in the mid-2000s, between Plaintiff Dr. Lana Foster ("Plaintiff") and the District. (*See* Doc. 22 ¶¶ 2, 3). Plaintiff, who is black, is a former employee of the District, (*id.*), and before the 2008–09 school year, she was employed in a regular teaching position. (*See id.* ¶ 93). That year, however, Plaintiff was moved to a "less desirable Alternative School position[,]"(*id.* ¶ 93), and she faced "false" and "racially motivated, slanderous allegations that resulted in her losing her Jr. Beta Club" leadership positions. (*Id.* ¶ 94).

In response, Plaintiff brought racial discrimination and retaliation claims against the District. (Doc. 22 ¶ 95). Plaintiff and the District settled these claims in 2011. (Doc. 22 ¶ 95). After the 2011 settlement, Plaintiff alleges the District retaliated against her with "vile racism, prejudice, and slanderous false allegations," (Doc. 22 ¶ 96), which included colleagues telling her that they had been informed that association with her would lead to termination, and the District informing Plaintiff that white families in Echols County do not want black teachers educating their children. (*Id.*)

The United States Department of Education Office of Civil Rights ("OCR") then filed a complaint against the District. (Doc. 22 ¶ 97). After an investigation, OCR and the District entered into a "Resolution Agreement" in 2012 to resolve the "complaint against [them] and to ensure compliance with Title VI of the Civil Rights Act[.]" (*Id.* ¶ 97). The Resolution Agreement, *inter alia*, required the District to develop a recruitment plan for increasing the number of qualified black applicants, develop a new hiring policy, and required the District to conduct anti-discrimination training. (*See* Doc. 22-3). Plaintiff alleges, albeit in a somewhat conclusory fashion, that the District failed to comply with this agreement. (Doc. 22 ¶ 98).

In 2018, the District accused Plaintiff of ethical violations and terminated her employment. (Doc. 22 ¶ 99). An Attorney General investigation, however, found no probable cause for these charges. (*Id.*) Plaintiff alleges that the charge was pretext, and that her termination was, in fact, retaliation for her previous lawsuit and "bringing . . . the attention of the federal government against [the District.]" (*Id.*) As a result, Plaintiff brought charges of

racial discrimination and retaliation against the District with the Equal Employment Opportunity Commission ("EEOC") in 2018. (*Id.* ¶ 103).

In November 2020, the District, once again, settled Plaintiff's claim against them. (Doc. 22 ¶ 103). This time entering into the "Negotiated Settlement Agreement," ("the Settlement Agreement") which is the subject of the instant action. (Doc. 22-1 at 5).[1] According to the Settlement Agreement, Plaintiff agreed not to initiate a lawsuit related to her 2018 EEOC Complaint, (*id.* ¶ 2(a)), in exchange for two sets of promises by the District, which are the subject of the instant action. (*See id.* §§ II, III).

At Section II, captioned "CHARGING PARTY'S RELIEF" the District promised to (a) pay Plaintiff $137,500, (b) not to retaliate against her "with respect to this charge in any employment related matters," (c) remove documents relating to her termination from her personnel file, (d) change the status of her termination from "involuntary termination to voluntary resignation[,]" (e) give her a neutral reference, and (f) provide her with a copy of her entire personnel file. (Doc. 22-1 § II ¶ (2)(a)–(c)).

At Section III, captioned "RECRUITMENT AND HIRING[,]" the District promised to "develop and implement a written, publicly available hiring procedure for teacher and professional . . . positions." (Doc. 22-1 § III ¶ 1). This included, at minimum, to (a) develop guidelines for determining the best qualified candidates, (b) keep files containing application records and materials generated during the hiring process, (c) keep written hiring recommendations for a period of three years, and (d) publish the hiring procedure on the District's website, to be linked directly from the front page. (*Id.* § III ¶ 1(a)–(d)). The District also agreed to develop a recruitment plan for increasing the number of qualified black applicants which included (a) "[i]dentifying sites within a reasonable distance that are the best

---

[1] Although, generally, a Court must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint, *see* Fed. R. Civ. P. 12(b), a district court may consider an extrinsic document if it is central to a plaintiff's claim and its authenticity has not been challenged. *SFM Holdings v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Here, Plaintiff has submitted the 2020 Settlement Agreement between Plaintiff and the District. (Doc. 22-1). The Court finds that because the contents of the Settlement Agreement are central to Plaintiff's claims, and Defendants do not challenge their authenticity, the Court will consider the attached Settlement Agreement, without converting Defendants' Motion to dismiss into a motion for summary judgment.

sources for minority applicants[,]" and including those sites "as the highest priorities for recruitment"; (b) having timely online job postings; (c) regularly participating in Valdosta State University's job fair; and (d) publishing the recruitment plan on the District's website, linked directly from the front page. (*Id.* § III ¶ 2(a)–(d)). The hiring and recruitment plan obligations would expire three years from the execution of the Settlement Agreement. (*Id.* § III ¶ 3).

Plaintiff, to verify the District's compliance with the Settlement Agreement, submitted a Georgia Open Records Act request in October 2021. (Doc. 22 ¶ 146). In response, the District, through counsel, directed Plaintiff to a hiring procedure that had been last revised in July of 2013. (*Id.* ¶¶ 148–52). It appears that the District reacted to Plaintiff's inquiry by revising their hiring policy in January 2022. (*See id.* ¶ 153).[2] Plaintiff alleges that Defendants breached the Settlement Agreement in a number of ways, which the Court will describe in more depth below. (*See* Doc. 22 ¶¶ 10–129). Plaintiff also alleges that Defendants intentionally breached the Settlement Agreement because of Plaintiff's race, and in retaliation for her previous complaints about racism in the District. (*See id.* ¶¶ 10–129, 189–207).

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Fed. R. Civ. P. 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*,

---

[2] Defendants submitted a document which they represent as the January 2022 hiring plan. (Doc. 27-3). However, there appears to be considerable dispute between the Parties about the authenticity of the document and over what period the policy described was the enacted policy of the District. (*See* Doc. 27-1 at 18–20); (Doc. 31 at 10–11). The Court thus declines to consider the document for purposes of this motion to dismiss. *See SFM Holdings*, 600 F.3d at 1337.

602 F.3d at 1291 (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings, the Court makes reasonable inferences in plaintiff's favor, but is not required to draw plaintiff's inference. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks omitted) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). On a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555), for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

### B. Plaintiff's Allegations

Plaintiff alleges three violations of the Settlement Agreement, both based on the deficiency of the July 2013 policy received in Response to her open records request, and that of the January 2022 policy. (*See* Doc. 138 ¶¶ 157–85). As a result of Defendants' failure to comply with the Settlement Agreement, Plaintiff alleges, Defendants failed to hire "any Black person in any capacity." (Doc. 22 ¶ 181).

First, Plaintiff alleges that between the execution of the Settlement Agreement, and January 2022, the District entirely failed to comply with their promise to immediately develop a new hiring procedure as required by Section III(1)(a) of the Settlement Agreement. (Doc. 22 ¶¶ 151–52). And that the policy updated in July 2022 is also deficient because it fails to include language referring to the retention of files, as required by Section III(1)(b). (*Id.* at 153).

Second, Plaintiff alleges between the execution of the Settlement Agreement, and January 2022, the District failed to identify sites within a reasonable distance of the District that are the best sources of minority applicants, as required by Section III(2)(a) of the Settlement Agreement. (Doc. 22 ¶¶ 166–67). And that the January 2022 policy is deficient because it does not identify sites which are the best sources for minority applicants. (*Id.* ¶¶ 169–78)

Third, Plaintiff alleges that the District's deliberate failure to comply with the Section III provisions of the Settlement Agreement, violates the anti-retaliation provisions of the agreement, found at Section II. (Doc. 22 ¶¶ 183–85).

## C. Counts II, III & IV: Breach of Contract Claims

Defendants move to dismiss Plaintiff's Breach of Contract claims, which include a Breach of Contract claim under Title VII and Georgia state-law, at Counts II and III; and a Breach of the Implied Covenant claim, all under Title VII and Georgia state-law. (Doc. 27-1 at 14–21). If the Court determines that some, but not all of the allegations constitute a breach Defendants move to strike paragraphs which the Court determines do not constitute a breach. (Doc. 27-1 at 20).

### 1. Choice of Law

As an initial matter, because Plaintiff invokes both Title VII and Georgia Law for her Breach of Contract claims, the Court must first determine whether claims for breaches of the Settlement Agreement sound in federal common law, or state-law. The Settlement Agreement is a "predetermination settlement agreement[,]" which is "a contract between a complaining employee and the allegedly discriminatory employer that is reached with the aid of the EEOC prior to an EEOC determination of the merits of the complaining employee's charge of discrimination. *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1519 (11th Cir. 1986) (per curium) (citing *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1511 (11th Cir. 1985)). Claims for breaches of predetermination settlement agreements are brought under Title VII, *Bristol Steel*, 769 F.2d at 151, and federal common law governs their enforcement.

*Brewer*, 769 F.2d at 1519.[3] Breaches of the Settlement Agreement, therefore, do not sound in Georgia law. *See Brewer*, 790 F.2d at 1519; *Bristol Steel*, 769 F.2d at 1516.

Accordingly, Defendants' motion to dismiss Plaintiff's Georgia state-law Breach of Contract claim, at Count III, Plaintiff's Breach of the Implied Covenant claim, at Count IV, to the extent it relies on Georgia law; and Plaintiff's Breach of a Third-Party Beneficiary Agreement, at Count V, to the extent it relies on Georgia Law is **GRANTED**. Those claims are thus **DISMISSED-WITH-PREJUDICE**.

### 2. Count II: Title VII Breach of Contract

Under federal common law, to state a claim for Breach of Contract, a plaintiff must sufficiently allege "(1) the existence of a contract, (2) material breach, and (3) damages." *See Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Cont. No. B0S621MARSRSWV15BND*, 766 F.App'x 795, 803 (11th Cir. 2019) (enumeration added) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005)). Defendants do not dispute that a contract existed. (*See* Doc. 27-1 at 14–21). But they attack the second and third elements: breach, and damages. (*Id.*)

### a. Breach

Defendants contend that Plaintiff has failed to sufficiently allege a breach of the Settlement Agreement. (Doc. 27-1 at 14–20). When interpreting contracts under federal common law, courts look to general common law contract principles. *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 n.11 (11th Cir. 2008) (citing *Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 n.12 (11th Cir. 1994)). For this reason, the plain meaning of the Settlement Agreement governs its interpretation. *Belize Telecom.*, 528 F.3d at 1307. And the Court must look at "the contract as a whole, the parties, and the agreement's purpose to best determine the intent of the parties." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1315 (11th Cir. 2020) (citing *Slater v. Energy Servs. Grp. Int'l*, 634 F.3d 1326, 1330 (11th Cir. 2011)). Plaintiff, as

---

[3] The Circuits are split on the issue of choice of law for construction of Title VII settlement agreements. *Compare Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) (holding that state law governs interpretation of EEOC settlement agreements) *with Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir. 1989) (holding that interpretation of a release of claims under Title VII is governed by federal law). The Eleventh Circuit, however, was clear in *Brewer* that interpretation of Title VII predetermination settlement agreements is governed by federal common law. *Brewer*, 790 F.2d at 1519.

noted, alleges breaches of Section II and III of the Settlement Agreement. (Doc. 22 ¶¶ 157–85).

### i. Section II

Section II of the Settlement Agreement required the District not to retaliate against Plaintiff "with respect to [her EEOC charge] in any future employment related matters." Plaintiff alleges that "by breaching Section III . . . of the Agreement with retaliatory intent, Defendants also breached Section II(b) . . . ." (Doc. 22 ¶ 141). Plaintiff's, somewhat strained, argument goes something like this: because she agreed that she would never seek employment with the District again, and the Settlement Agreement prohibits her from seeking employment with the District, the plain meaning of the phrase "employment related matters" encompasses any breach of the agreement with retaliatory intent.

The Court agrees with Plaintiff that it should prefer a construction of the Settlement Agreement that gives "reasonable meaning to all provisions of a contract," and does not "leave[] a part useless or inexplicable." *See In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015) (quoting *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011)). But a plain-language reading of the Settlement Agreement, as a whole, does not render the anti-retaliation in employment provision useless or inexplicable, because the District also agreed to perform employment related obligations to Plaintiff in contexts outside of a direct employer-employee relationship. For example, the District agreed to give Plaintiff a neutral reference, which is also an employment related matter, within the plain meaning of that phrase. (Doc. 22-2 § II(c)). Because there are specific ongoing employment relationships contemplated by the Settlement Agreement, the definition of "employment related matters" has reasonable meaning without adopting Plaintiff's expansive definition. In other words, Plaintiff's highly inclusive construction of the anti-retaliation provision of the Settlement Agreement is unnecessary, and the Court rejects it. To state a claim for a breach of Section II, Plaintiff must allege that Defendants retaliated against her in any of the employment matters specifically contemplated by the agreement. (*See* Doc. 22 ¶¶ 122–88). Plaintiff has not done so and has therefore failed to sufficiently allege a breach of Section II of the Settlement Agreement.

### ii. Section III

Section III of the Settlement Agreement required the District to "immediately" develop and implement a hiring policy and recruitment plan which complied with certain minimum requirements. (Doc. 22-1 § III). The plain language of the Settlement Agreement thus required immediate action on behalf of the District. (*See id.*) But, as alleged, the District failed to develop any policies at all until January 2022—a 14 month delay from the execution of the Settlement Agreement on November 12, 2020. (Doc. 22 ¶¶ 150–53). The Court finds that such a 14-month delay to comply with Section III, if proved, could be a breach of the Settlement Agreement, because that timeframe could be found to exceed any reasonable construction of the word "immediately."[4] Plaintiff has therefore sufficiently alleged a breach of Section III.[5]

### b. Damages

Defendants contend that Plaintiff has failed to allege that she has suffered damages as a result of their alleged breach of the Settlement Agreement, and therefore lacks contractual standing to bring a claim for its breach. (Doc. 27-1 at 15–16).

### i. The Parties' Arguments

To appropriately respond to Defendants' motion, the Court will first attempt to disentangle the Parties' arguments regarding standing. Defendants raise issues of "standing" twice in their initial Motion, regarding both Plaintiff's Breach of Contract claims, and her § 1981 claims. (Doc. 27-1 at 9–11, 15–16). It is clear from the initial brief that Defendants challenge Plaintiff's contractual standing under the Settlement Agreement, not Plaintiff's constitutional standing to bring the instant action. (*See id.*) Despite this, Plaintiff responds to Defendants' arguments as if they were a challenge to this Court's subject matter jurisdiction over her claim, rather than to contractual standing. Then, in their Reply, Defendants argue

---

[4] Immediately is defined as (1) "without interval of time: straightaway," or (2) "in direct connection or relation." *Immediately*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/immediately (last visited May 16, 2024).

[5] Defendants counter that the hiring policy revised in January 2022 is sufficient to meet their obligations under Section III. (Doc. 27-1 at 17–20) However, the Court declines to reach this question because Plaintiff has sufficiently alleged a breach based on pre-January 2022 conduct, and as noted, the Court will not consider the hiring policy Defendants represent as the January 2022 policy for purposes of this motion to dismiss. *See supra* n.10

that Plaintiff has not suffered an "injury in fact"—suggesting that, now, they wish to challenge Plaintiff's constitutional standing.

To resolve this mess, the Court makes three findings. First, that Defendants' Motion cannot be construed to challenge constitutional standing, as evidenced by the text of their brief, the authority they rely on, and the fact that the Motion is brought under Rule 12(b)(6), rather than 12(b)(1). (*See* Doc. 27-1). Second, that Defendants' constitutional standing arguments, as raised for the first time in their Reply, are not properly before the Court, and thus the Court will not consider them. *See e.g., Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005). Third, that the analysis of Defendants' arguments against standing is only in relation to their motion made under Rule 12(b)(6) and should not be construed as making any finding as to a motion made under Rule 12(b)(1). Accordingly, to the extent Defendants assert lack of constitutional standing, the same is **DENIED-WITHOUT-PREJUDICE**.

### ii. Contractual Standing

Turning to Defendants' argument that Plaintiff has not sufficiently alleged that her rights were impaired, the Court is unpersuaded. Put simply, Defendants invite the Court to read the Settlement Agreement as assigning two sets of parallel obligations, with Section II assigning obligations between the District and Plaintiff; and Section III assigning obligations between the District and the EEOC. (*See* Doc. 27-1 at 15–18). From this dubious premise, Defendants surmise that even if Plaintiff could allege that the District breached Section III of the Settlement Agreement, she has suffered no impairment of the obligations owed to her, and therefore has not suffered any damages from the breach.

Congress intended Title VII "to be enforced primarily through conciliation and voluntary compliance[,]" and this goal would "be hampered if employees could not seek to enforce in federal courts conciliation agreements between themselves, their employers and the EEOC." *See Bristol Steel*, 769 F.2d at 1509 (citing *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984)). And, as noted, the Court must interpret the Settlement Agreement based on its plain language, reading the agreement as a whole. *See Belize Telecom*, 528 F.3d at 1307.

Here, the Court finds no text in the Settlement Agreement that supports a finding that the obligations of Section III are enforceable only by the EEOC, (*see* Doc. 22-1) and

Defendants have directed the Court to no authority which supports such an interpretation. (*See* Docs. 27-1 & 35). To the contrary, the Settlement Agreement is clear that the promises made by the District are in exchange for Plaintiff's obligation not to pursue claims related to her EEOC charge. (Doc. 22-1 at 1). The language describing the exchange draws no distinction between Sections II and III, or limits Plaintiff's ability to enforce Section III. (*See id.*) The Court, therefore finds, that Plaintiff was owed obligations under Section III of the Settlement Agreement, which she alleges that the District breached. Plaintiff has thus sufficiently alleged that she was damaged by Defendants' breach of Section III.[6]

### c. Motion to Strike

Defendants move the Court, in the alternative, to strike the portions of the Complaint containing allegations that do not constitute a breach because they will "substantially narrow [Plaintiff's] claim for judicial economy." (Doc. 27-1 at 20). Under Fed. R. Civ P. 12(f) a court may strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Motions to strike are highly disfavored because they require the Court to impose "a drastic remedy[.]" *West v. S. AG Carriers, Inc.*, No. 1:16-CV-134 (WLS), 2017 WL 10752210, at *1 (M.D. Ga. Mar. 16, 2017). These motions are typically denied, "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Agan v. Katzman & Korr, P.A.*, 328 F.Supp.2d 1363, 1367 (S.D. Fla. 2004) (citation and quotation marks omitted).

Here, Defendants ask the Court to strike any allegations that they failed to hire any black educators since executing the Settlement Agreement, failed to provide specific language in their January 2022 recruitment procedure, failed to identify sites that are the best sources for minority applicants, failed to develop a recruitment plan, failed to create a hiring procedure, and violated Section II of the agreement. (Doc. 27-1 at 20 n.5). However, they make no

---

[6] Defendants also suggest that because Plaintiff can show no specific financial loss, she cannot establish that she was damaged by a breach of the Settlement Agreement. It is axiomatic however, that a party to a contract may acquire rights which benefit a third party, that do not have a pecuniary value to the holder of those rights. *See e.g.*, *Fla. Asphalt Pavement Mfg. Co. v. Fed. Rsrv. Bank of Atlanta*, 76 F.2d 326, 327–28 (5th Cir. 1935). And ". . . a breach of contract by a party against whom it is enforceable always gives rise to a claim for damages . . ." even if "that breach caused no loss." Restatement (Second) of Contracts § 346 (Am. Law. Inst. 1981). The Court therefore finds Defendants' argument, unpersuasive.

arguments that those paragraphs in the complaint are "redundant, immaterial, impertinent or scandalous." (*See id.* at 20). Instead, Defendants make vague assertions that striking those paragraphs would serve judicial economy. (*Id.*) The Court declines to impose the drastic remedy of striking those paragraphs based on such a meager showing. Accordingly, Defendants' motion to strike is **DENIED**.

### d.   Conclusion: Title VII Breach of Contract

In sum, the Court finds that Plaintiff has sufficiently pleaded that the District breached Section III of the Settlement Agreement, and that she suffered resulting damages. Plaintiff has, therefore, stated a Breach of Contract claim with respect to Section III. As a result, Defendants' motion to dismiss Plaintiff's Breach of Contract claim with respect to Section III of the Settlement Agreement is **DENIED**. However, because Plaintiff has failed to sufficiently plead that the District breached Section II, Defendants' motion to dismiss with respect to their alleged breach of Section II is **GRANTED**. Therefore, Defendants' Title VII Breach of Contract claim, with respect to a breach of Section II of the Settlement Agreement, at Count II is **DISMISSED-WITH-PREJUDICE**. Additionally, Defendants' motion to strike portions of Plaintiff's complaint that Defendants contend do not constitute a breach is **DENIED**.

### 3.   Count IV: Breach of the Implied Covenant

Defendants contend that Plaintiff has failed to state a claim for a Breach of the Implied Covenant claim because it is "duplicative" of Plaintiff's Breach of Contract claim, and thus cannot be maintained simultaneously with a Breach of Contract claim. (Doc. 27-1 at 21). Defendants rely on a line of authority which does not allow a breach of the implied covenant claim to be maintained simultaneously with a breach of contract claim. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (applying New York Law); *Cutler Bay Apartments, LLC v. Bank of Am., N.A.*, 805 F.App'x 996, 1003 (11th Cir. 2020) (same). But that authority is inapposite because it explains New York state law rather than federal common law, which, as noted, defines the relevant inquiry.

Under federal common law, which adopts the Restatement (Second) of Contracts position, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Alabama v. North Carolina*, 560 U.S. 330, 351 (2010) (quoting

Restatement (Second) of Contracts § 205 (Am. L. Inst. 1981)). For this reason, failure to fulfill this duty constitutes a breach, just as much as a failure to fulfill an explicit duty imposed by the contract. *See Metcalf Const. Co. v. United States*, 742 F.3d 984, 991 (Fed Cir. 2014) (citing *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed Cir. 2010); *Malone v. United States*, 849 F.2d 1441, 1445–46 (Fed. Cir. 1988)).[7] Because a breach of the implied covenant constitutes a breach, a party may sustain a breach of contract claim simultaneously with a breach of the implied covenant claim. *See Metcalf*, 742 F.3d at 991; *see also Clark v. Aaron's Inc.*, 914 F.Supp.2d 1301, 1308 (N.D. Ga. 2012) (under Georgia law, "the causes of action for breach of the implied covenant and breach of contract are [not] duplicative; on the contrary, the causes of action are separate and distinct and may be plead[ed] simultaneously."); *TechBois, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009) (denying motion to dismiss when plaintiff adequately stated a breach of contract claim and the resulting duties imposed by the contract provided adequate basis for an independent breach of the implied covenant claim). [8] Accordingly, Defendants' motion to dismiss Plaintiff's Breach of the Implied Covenant claim, at Count IV, to the extent it relies on Title VII is **DENIED**.[9]

### 4. Count V: Breach of Third-Party Beneficiary Agreement

Defendants move to dismiss Plaintiff's Breach of Third-Party Beneficiary Agreement claim. (Doc. 27-1 at 21) Defendants contend that Plaintiff has failed to state a claim because she was not a third-party beneficiary. (*Id.*) The Court agrees. Under federal law, an intended

---

[7] Decisions of the United States Court of Appeals for the Federal Circuit are not binding on this Court. However, because federal courts use federal common law to evaluate government contracts, *Begner v. United States*, 428 F.3d 998, 1004 (11th Cir. 2005), those decisions are highly persuasive when evaluating the federal common law of contracts.

[8] The Court adopts a position that is consistent with Georgia state law. When determining which doctrine to apply, courts will "often select a rule of state law." *W. Sec. Co. v. Derwinski*, 937 F.2d 1276, 1280 (7th Cir. 2005) (citing *United States v. Yazell*, 328 U.S. 341 (1966)); *Begner*, 428 F.3d 998, 1004–05 (11th Cir. 2005)). "But that determination is itself an interpretation of federal common law; a determination that, for this particular case, the federal common law rule shall be state-law rule thus-and-so." *Western Sec.*, 937 F.2d at 1280 (citing *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979); *Powers v. U.S. Postal Serv.*, 671 F.2d 1041, 1043 (11th Cir. 1991)).

[9] The Court has already dismissed Count IV to the extent it relies upon Georgia state law. *See supra* Section II.C.1.

third-party beneficiary may sue to enforce the terms of a contract. *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). However, to state a third-party beneficiary claim, a plaintiff must allege that the contract reflects an "express or implied intention of the parties to the contract to benefit the third party[.]" *Interface Kanner*, 704 F.3d at 932. Here, the Court finds that the Settlement Agreement was intended to benefit Plaintiff as the primary beneficiary of all sections of the agreement, and therefore she cannot also be a third-party beneficiary. Accordingly, Plaintiff fails to state a claim for a Breach of a Third-Party Beneficiary Agreement. As a result, Defendants' motion to dismiss that claim, at Count V, is **GRANTED** and that claim is **DISMISSED-WITH-PREJUDICE**.[10]

### D.    Counts I & VI: § 1981

#### 1.    Standing

Defendants move to dismiss Plaintiff's § 1981 claims, at Counts I and VI, contending that she lacks "standing" to challenge the District's alleged breaches under § 1981. (Doc. 27-1 at 9–11). This argument, essentially, renews Defendants' attempt to bifurcate the Settlement Agreement into rights owed to Plaintiff, in Section II, and rights owed to the EEOC, in Section III. The Court is similarly unpersuaded in the § 1981 context.

To recover under § 1981 for impairment of a contractual relationship, a plaintiff must be the one who "has or would have rights under the existing or proposed contractual relationship." *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1175 (11th Cir. 2016) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). This rule prevents unintended beneficiaries of a contract from recovering under § 1981, but it does not apply when plaintiff is the primary beneficiary. *See Moore*, 834 F.3d at 1175.[11] As the Court has already explained, the Settlement Agreement draws no distinction between the rights owed to Plaintiff and those owed to the EEOC, and therefore Sections II and III both grant Plaintiff enforceable rights under the Settlement Agreement. Therefore, Plaintiff, as alleged, has rights under the Settlement Agreement which are protected by § 1981.

---

[10] The Court has already dismissed Count V to the extent it relies on Georgia law. *See supra* Section II.C.1.

[11] Effectively, this precludes third-party beneficiary claims under § 1981.

### 2.   Count I: § 1981 Denial of Rights

Defendants move to dismiss Plaintiff's § 1981 Denial of Rights claim, at Count I, contending that Plaintiff has not sufficiently alleged her claim. (Doc. 27-1 at 11–12). To state a claim of race discrimination under § 1981, a plaintiff must allege "(1) that [she] is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004) (citing *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1235 (11th Cir. 2000)). Defendants challenge the second element. (Doc. 27-1 at 11).

To sufficiently plead intentional discrimination, a plaintiff must allege, *inter alia,* that race was the but for cause of the denial of a legally protected right. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 338 (2020); *see Ossman Corp. v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023). While this standard does not require a plaintiff to show that race was the exclusive cause of the denial, *Ossman*, 82 F.4th at 1014 (citing *United States v. Benjamin*, 958 F.3d 1124, 1131–32 (11th Cir. 2020)), she must allege specific facts which show that the discriminatory conduct had a "determinative influence" on her injury. *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1298–99 (11th Cir. 2021). To survive a motion to dismiss "a complaint need only provide enough factual matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).

According to Defendants, Plaintiff has not alleged "any factual allegations showing that [their] breach of the Agreement was due to racial discrimination." (Doc. 27-1 at 12). This is simply untrue; Plaintiff has alleged ample facts which suggest intentional discrimination. For example, Plaintiff alleges "Defendants hold racial animus as evidenced by their longstanding history of race discrimination that they have perpetuated against [Plaintiff] and her family which is well-documented by the United States government and previous lawsuit." (Doc. 22 ¶ 41). The Amended Complaint describes racial animus in detail, including the alleged discriminatory conduct which caused the District to settle two separate claims with Plaintiff. (*Id.* ¶¶ 88–114). And references specific acts of discrimination by District employees. (*E.g.,* Doc. 22 ¶ 102) Taken together, these allegations permit a reasonable inference that those employees had racial animus when they breached the Settlement Agreement. (*See* Doc. 22 ¶¶

38, 39, 102). The Complaint then alleges that Defendants' alleged racial animus caused the District, and the Individual Defendants acting on behalf of the District, to breach the Settlement Agreement. (*Id.* ¶¶ 16, 20, 25, 27, 31, 34, 35). Plaintiff has therefore pleaded enough factual matter which, when taken as true, suggests that racial animus was a determinative influence in Defendants' decision to breach the Settlement Agreement. In other words, as alleged, racial animus was the but for cause of the alleged breach. Plaintiff has thus sufficiently alleged intentional discrimination and Defendants' motion to dismiss Plaintiff's § 1981 Denial of Rights claim is, as a result, **DENIED**.

### 3. Count VI: § 1981 Retaliation

Defendants move to dismiss Plaintiff's § 1981 Retaliation claim, (Doc. 27-1 at 12–14), which is pleaded in the alternative to her Denial of Rights claim. (Doc. 22 ¶¶ 189–207). Section 1981 also provides protection from retaliation for opposing practices which violate § 1981 rights. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010) To state a claim of § 1981 retaliation,[12] a plaintiff must show: (1) she engaged in a statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was a causal relation between the two events. *Butler*, 536 F.3d at 1212–14 (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)). Defendants challenge the first element.[13]

"As with other statutory retaliation claims," a claim under § 1981 "requires that the protected activity involve the assertion of rights encompassed by the statute[,]" *Jimenez*, 596 F.3d at 1311, which includes the right to "make and enforce contracts without respect to race." *Domino's Pizza*, 546 U.S. at 474 (citing 42 U.S.C. § 1981(a)). "Thus, to engage in protected activity under [§] 1981, plaintiff must complain about a race-based 'contractual injury' such as

---

[12] Claims brought under Title VII and § 1981 employ the same analytical framework and requirements. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 n.14 (11th Cir. 2011) (citing *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991)); *see Robinson v. LaFarge N. Am., Inc.*, 240 F.App'x 824, 828 (11th Cir. 2007) (citing *Burlington N. & Stanta Fe Ry. v. White*, 548 U.S. 53, 53 (2006)) (applying Title VII retaliation elements in the § 1981 Context). The Court therefore relies on authority which interprets Title VII retaliation claims when conducting its analysis under § 1981.

[13] Defendants also challenge Plaintiff's allegations of materially adverse actions. (Doc. 27-1 at 12–13). The Court will not reach this argument, because Plaintiff has failed to sufficiently allege a statutorily protected activity.

the 'violation of [a] person's contract related rights' or the 'impair[ment]' of a 'contractual relationship.'" *Posey v. Atlanta Pub. Schs.*, - - - F. Supp. 3d - - -, 2024 WL 1223474, at *3, (N.D. Ga. Mar 21, 2024) (citing *Domino's Pizza*, 546 U.S. at 476; *Ziyadat*, 3 F.4th at 1296; *Hayes v. ATL Hawks, LLC*, 844 F.App'x 171, 183 (11th Cir. 2021)).

Here, although Plaintiff's pre-Settlement Agreement complaints may well have been protected activity under § 1981, under the Settlement Agreement, Plaintiff forfeited any claim based on the facts underlying her 2018 EEOC Complaint. (*See* Doc. 22-1 ¶ 2(a)) ("the Charging Party agrees . . . not to institute a lawsuit with respect to the above referenced charge or hold the Respondent liable for any present or future claims regarding Title VII, as related to her [EEOC Charge]"); *see also Hopkins v. Bd. of Educ.*, 73 F.Supp.3d 974, 984 (N.D. Ill. 2014) ("By virtue of the settlement agreement, [plaintiff] effectively agreed to carve out conduct predating the 2009 EEOC complaint from any future claim she might assert.") As a result, Plaintiff attempts to rely on the negotiations leading up to the Settlement Agreement as protected activities. (Doc. 22 ¶ 192) ("during her settlement negotiations, daring to demand [Defendants] develop and implement a Hiring Procedure and Recruitment Plan that would address their discriminatory practices"); (*id.* ¶ 193) ("demanding that [Defendants] develop and implement a Hiring Procedure and Recruitment Plan to remedy the discrimination by failing to provide her the very thing that she bargained for"). The Court, however, will not allow Plaintiff to resurrect the complaints she settled in 2020, by recasting them as motivating factors for her settlement demands. These demands are not fresh complaints for purposes of § 1981 but continuations of the complaints which formed the basis of her 2018 EEOC Complaint— complaints Plaintiff agreed not to pursue in the Settlement Agreement. The Court, therefore, finds that Plaintiff has not sufficiently alleged that she engaged in protected activity and thus has failed to state a claim under § 1981. Plaintiff has alleged no new or additional acts to support the present § 1981 claim. Accordingly, Defendants' motion to dismiss Plaintiff's § 1981 Retaliation claim is **GRANTED**. That claim, at Count VI, is **DISMISSED-WITH-PREJUDICE**.

**E.    Claims against Individual Defendants**

**1.    Official Capacity Defendants**

Defendants move to dismiss the claims against the Individual Defendants[14] in their official capacities contending those claims are duplicative of the claims against the school district. Plaintiff does not make arguments in opposition. (*See* Doc. 31 at 21–23). However, a review of the caption of the case, and the claims asserted, reveal that Plaintiff has not alleged any claims against the Individual Defendants in their official capacity. (*See* Doc. 22 at 1, 4 ¶¶ 1–7). Accordingly, Defendants' motion to dismiss the claims against the Individual Defendants in their official capacities is **DENIED-AS-MOOT**.

**2.    Specific Factual Allegations**

Defendants move to dismiss Plaintiff's claims against the Individual Defendants contending that she has failed to state her claims with sufficient specificity to satisfy Rule 8(a). (Doc. 27-1 at 23). The Court is unpersuaded by Defendants' arguments for two reasons.

First, Defendants mischaracterize Plaintiff's allegations as conclusory when, in fact, she pleads specific facts as to each Defendants' role in breaching the Settlement Agreement. (*See e.g.*, Doc. 22 ¶ 15) ("Defendant Shannon King, former Superintendent of the [District] signed the Settlement Agreement and was charged with the decision-making authority to develop and implement the policies and procedures of the School District and Board of Education, including developing and implementing the new 2020 Hiring Procedure and Recruitment Plan of the School District to comply with the terms of the Settlement Agreement but she did not do so."); (*id.* ¶ 20) ("Vincent M. Hamm was aware of the District's obligations . . . and chose to ignore his obligations as a representative of the District because of his race-based animus toward the Plaintiff.") The Court finds that these allegations are sufficient to state a plausible entitlement to relief. *See Edwards*, 602 F.3d at 1291.

Second, Defendants appear to suggest, citing no relevant authority, that to survive a motion to dismiss, Plaintiff must allege specific acts, by specific Defendants, to comply with Rule 8. To impose such a requirement essentially, requires Plaintiff to have inside knowledge of District operations, without the benefit of discovery. However, to satisfy the plausibility

---

[14] The Individual Defendants are Shannon King, Vincent Hamm, Rocky Crosby, Bo Corbett, Patricia Gray, Chad Pafford, and Mitchell Church.

standard, Plaintiff need allege only "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 50 U.S. at 556. The Court finds that Plaintiff's allegations regarding the Individual Defendants are sufficient to do so. Accordingly, Defendants' motion to dismiss Plaintiff's claims as to the Individual Defendants for failing to comply with Rule 8 is **DENIED**.

### 3. Breach of Contract and Breach of the Implied Covenant

Defendants move to dismiss the Breach of Contract and Breach of the Implied Covenant claims against the Individual Defendants, contending that because they were not parties to the Settlement Agreement, they cannot be liable for breaching it. (Doc. 27-1 at 24). The Court agrees. Under general agency principles, "one who acts in the capacity of an agent for a disclosed principal is not liable for claims arising out of a contract executed by the agent on behalf of his principal." *Lake City Stevedores, Inc. v. E.-W. Shipping Agencies, Inc.*, 474 F.2d 1060, 1063 (5th Cir. 1973) (citing Restatement (Second) of Agency §§ 320, 328 (Am. Law Inst. 1958)). And Plaintiff makes no arguments in opposition to dismissal of the Individual Defendants from Plaintiff's Breach of Contract claim. (*See* Doc. 31 at 19–24). Accordingly, Defendants' motion to dismiss Plaintiff's Breach of Contract claim and Breach of the Implied Covenant claim against the Individual Defendants is **GRANTED**. Those claims are **DISMISSED-WITH-PREJUDICE** as to the Individual Defendants.

### 4. Qualified Immunity

Defendants move to dismiss Plaintiff's § 1981 claim against the Individual Defendants, asserting the defense of Qualified Immunity. (Doc. 27-1 at 24–27). "The doctrine of [Q]ualified [I]mmunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Although Qualified Immunity is typically addressed at the summary judgment phase, a defendant may raise it in a motion to dismiss. *St. George v.*

*Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001))

### a. Discretionary Authority

"To be eligible for [Q]ualified [I]mmunity, the official must first establish that he was performing a discretionary function at the time the alleged violation of federal law occurred." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal quotation marks omitted) (citations omitted). An official performs a discretionary function when that officer was "performing a legitimate job-related function (that is, pursuing a job-related goal) . . . through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 n.17 (11th Cir. 1994)). The nature of a job-related function should be examined "at a general level rather than in a specific application[.]" *Smart v. England*, 93 F.4th 1283, 1288 (11th Cir. 2024) (internal quotations removed) (quoting *Holloman*, 370 F.3d at 1288).

Plaintiff argues that because Defendants had a contractual obligation to her, which they violated, they were not performing a legitimate job-related function. (Doc. 31 at 22.) But "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (internal quotations and citations omitted). "Framed that way, the inquiry is no more than an untenable tautology." *Id.* (internal quotations removed). Instead, the defendant "must have been performing a function that, *but for* the alleged [violation of a federal right], would have fallen with his legitimate job description." *Hollomon*, 370 F.3d at 1266. The relevant inquiry is thus whether complying with a school district contract is a legitimate-job related function. *See id.*

Here, monitoring contract compliance is a typical function of high-level school officials. And upon the allegations, it is clear that Defendants were charged with the authority to perform under District contracts, like the Settlement Agreement. (*See e.g.*, Doc. 22 ¶ 34) ("[Defendants Gray, Pafford, and Church] are all charged with decision-making authority to develop and implement a Hiring Procedure and Recruitment Plan required by the Settlement Agreement]"); (*id.* ¶ 35) ("collectively and individually the Members of the Board of Education made a decision not to immediately or ever develop and implement a Hiring Procedure and Recruitment Plan"). As such, Defendants were performing a legitimate job-related function,

with respect to their alleged § 1981 violations. The Court, therefore, finds that Defendants, as alleged, were performing a discretionary function.

### b. Qualified Immunity Analysis

#### i. Defendants' Arguments

Once the defendant shows that they were performing a discretionary function, the plaintiff bears the burden of sufficiently alleging that (1) the defendant violated a federal right and (2) that the right the defendant violated was clearly established at the time he did it. Defendants attack the first prong, making two arguments that they are entitled to Qualified Immunity. (*See* Doc. 27-1 at 24–26). The Court has already addressed each in other sections, and they are equally meritless in the Qualified Immunity context.

First, Defendants argue that Plaintiff has failed to allege specific allegations describing the role Individual Defendants played in their alleged violation of § 1981. This argument merely recycles Defendants' Rule 8 argument but in the context of Qualified Immunity. As the Court explained above, Plaintiff's allegations against the Individual Defendants are stated with enough specificity to survive a motion to dismiss. And, in particular, the Court finds that Plaintiff's allegations are sufficient to allege that the Individual Defendants violated a federal right. Second, Defendants argue that Plaintiff has failed to sufficiently allege a violation of § 1981. However, as noted *supra* in Sections II.B.1 and II.B.2, Plaintiff, at Count I, has sufficiently alleged a § 1981: Denial of Rights claim. Accordingly, Plaintiff has sufficiently pleaded that the Individual Defendants violated a federal right.

#### ii. Clearly Established Right

Ordinarily, the analysis would end after disposing of the moving party's arguments. However, in the Qualified Immunity Context, a plaintiff bears the burden of persuasion once the defense has been properly raised, as Defendants have here. *See e.g.*, *St. George*, 285 F.3d at 1337. The Court thus proceeds to whether Defendants violated a clearly established right.

A right is clearly established if "it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1273 (11th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Most of Plaintiff's argument that her rights were violated refer to whether § 1981 Retaliation is clearly unlawful, but the Court has dismissed Plaintiff's § 1981 Retaliation claim. *See supra* Section

II.D.3. Plaintiffs neglect to explain whether the Individual Defendants' alleged intentional discrimination violated a clearly established right. In any case, the Court finds that Defendants, as alleged, violated a clearly established right for two reasons.

First, the text of § 1981 alone clearly establishes the right to be free from an intentional breach of a contract because of race. "[T]he words of the pertinent federal statute . . . in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances . . . ." *Vinyard v. Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002) (emphasis removed) (citation omitted). In other words, the text "of a federal statute . . . may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard*, 311 F.3d at 5–6.

Here, § 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C § 1981(a). It is thus obvious from the statutory text that an official who intentionally breached a contract because of a contracting party's race would violate § 1981. *C.f. Sheba Ethiopian Rest., Inc. v. Dekalb Cnty.*, No. 21-13077, 2023 WL 3750710, at *7 (11th Cir. June 1, 2023) (holding that it was not obviously clear under § 1981 that a corporation could suffer discrimination based on its race). And that is precisely what Plaintiff alleges the Individual Defendants did. (Doc. 22 ¶ 116) (the Individual Defendants "refus[ed] to fufill [their] contractual obligations to Dr. Foster pursuant to the Negotiated Settlement Agreement [and] denied her contractual rights . . . because of her race, Black, African American.") The Court, therefore, finds that the text of § 1981 is specific enough that, upon Plaintiff's allegations, the Individual Defendants could be found to have violated clearly established law

Second, ". . . a broad principle in case law is [sufficient] to establish clearly the law applicable to a specific set of facts facing a governmental official, [when] it . . . do[es] so 'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003) (quoting *Vinyard*, 311 F.3d at 1351) (alteration in original) (internal quotations omitted). This method, dubbed "'obvious clarity' is a 'narrow exception' to the normal rule that only case law and

specific factual scenarios can clearly establish a violation. *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1198–99 (11th Cir. 2002)).

Here, it is well established in the Eleventh Circuit that race-based discrimination in employment is prohibited by § 1981. *See Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992) (denying Qualified Immunity to city official who demoted and fired employees and denied candidates job opportunities based on race); *Brown v. City of Fort Lauderdale*¸ 923 F.2d 1474, 1478 (11th Cir. 1991) (denying Qualified Immunity to city officials who terminated a black police officer based on his race); *Bogle v. McClure*, 332 F.3d 1347, 1355 (11th Cir. 2003) (denying Qualified Immunity to city officials who transferred librarians on the basis of race). Based on this principle, the Court finds that it would be clear to every reasonable government official that to violate an EEOC Settlement Agreement on the basis of a former-employee's race would violate federal law. For this reason, the Court finds that Plaintiff has sufficiently alleged that the Individual Defendants violated clearly established law based on general case principles. This finding is limited to Defendants' arguments based on the pleadings alone; not upon summary judgment or other finding upon evidence in the Record. Accordingly, Defendants' motion to dismiss Plaintiff's § 1981 claim based on Qualified Immunity is **DENIED-WITHOUT-PREJUDICE**.[15]

### F. Punitive Damages

Defendants move to dismiss Plaintiff's claim for punitive damages. (Doc. 27-1 at 16). Defendants make two arguments, but the Court is persuaded by neither.

First, Defendants contend that the Court should dismiss Plaintiff's punitive damages claim because "punitive damages are not recoverable from school districts under § 1981." (Doc. 27-1 at 16–17). The Court agrees that punitive damages under § 1981 are not recoverable

---

[15] Although entitlement to Qualified Immunity is usually made with the benefit of caselaw, with facts which are materially similar to the case at bar, *see Vinyard*, 311 F.3d 1340, 1351 (11th Cir. 2002), the Court is satisfied that at the motion to dismiss stage, Plaintiff has sufficiently alleged a violation of clearly established law relying on the statutory text and general principles. However, the Court makes no finding as to the ultimate question of immunity, and Defendants may renew their Qualified Immunity arguments at the summary judgment stage.

against municipalities. *See e.g.*, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).[16] But this misses the point. Plaintiff asks for punitive damages only against the Individual Defendants, and Defendants identify no case authority, and the Court can find none, which bars Plaintiffs from recovering punitive damages against employees of a school district in their individual capacity. (*See* Doc. 27-1 at 20–21).

Second, Defendants contend Plaintiff has not alleged "factual allegations to merit an award of punitive damages." (Doc. 27-1 at 16). Under § 1981, a court may award punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Ferrell v. Parker Grp.*, 168 F.3d 468, 476 (11th Cir. 1999) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Here, the Court finds Plaintiff's allegations are sufficient to allege she could be entitled to punitive damages against the Individual Defendants. (*See e.g.*, Doc. 22 ¶ 45) ("Because the decision not to develop a Hiring Procedure and Recruitment Plan . . . was made with reckless and callous disregard for [Plaintiff's § 1981 rights, she] is entitled to punitive damages"), particularly in light of the ongoing and apparently bitter disputes over the last two decades between Plaintiff and the District. (*See id.* ¶¶ 84–102). Accordingly, Defendants motion to dismiss Plaintiff's claim for punitive damages is **DENIED**.

### G. Plaintiff's Motion

At the end of their Response, Plaintiff submits "[i]f the Court finds deficiencies in the complaint, [P]laintiff respectfully requests leave to amend to correct any deficiencies." (Doc. 31 at 27).[17] The Court construes this as a motion to amend under Fed. R. Civ. P. 15. Ordinarily, the Court would not consider a motion raised in a response brief, because that

---

[16] In support of this argument, Defendants cite an Order written by the undersigned which does *not* support the proposition for which they cite it. *See Collins v. Mitchell Cnty. Bd. of Educ.*, No. 1:09-CV-139, 2011 WL 11515515, at *4 (M.D. Ga. Sept. 29, 2010) (dismissing punitive damages claim against a school district because "plaintiff has provided no factual allegations that allege sufficient conduct to merit an award of punitive damages").

[17] In support of this, Plaintiff cites *Bank v. Pitt*, which is no longer good law. 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002).

motion would not be properly in front of the Court.[18] However, because Defendants did not object in their Reply brief to the Court's consideration of Plaintiff's motion, the Court will consider Plaintiff's motion to amend.

Under Rule 15, a party may amend its pleading once as a matter of course. Thereafter, the party must seek leave of the court and the court should give this leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, Plaintiff has already amended a complaint once in response to a motion to dismiss. (*See* Docs. 18 & 22). The Court does not find that justice requires that it grant leave to amend. Allowing an amendment to cure the deficiencies identified by the Court in this Order would be fundamentally unfair to Defendants, who have already recast their motion to dismiss once before in response to an amended complaint. In short, a motion to dismiss should not be a forever moving target. Accordingly, Plaintiff's motion to amend as asserted is **DENIED**. Plaintiff as to the matters not resolved herein may file a specific motion to amend upon specific grounds supported by Rules and citation to relevant law and supported by memorandum.

## III. CONCLUSION

In sum, for the foregoing reasons, Defendants' Motion to Dismiss (Doc. 27) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's Title VII Breach of Contract claim, at Count II, to the extent it relies on a breach of Section II of the Settlement Agreement; Georgia state-law Breach of Contract claim, at Count III; Breach of the Implied Covenant claim, at Count IV, to the extent it relies on Georgia law; Breach of Third-Party Beneficiary Agreement claim, at Count V; § 1981 Retaliation claim, at Count VI are **DISMISSED-WITH-PREJUDICE**. Additionally, Plaintiff's Breach of Contract Claim and Plaintiff's Breach of the Implied Covenant claims, as to Defendants Shannon King, Vincent Hamm, Rocky Crosby, Bo Corbett, Patricia Gray, Chad Pafford, and Mitchell Church, are **DISMISSED-WITH-PREJUDICE**

As a result, the only claims that remain in the action are Plaintiff's § 1981 Denial of Rights claim, at Count I; Plaintiff's Title VII Breach of Contract claim, at Count II, to the

---

[18] Under Local Rule 7.1 "[w]here possible, multiple motions filed at the same time, in the same case, shall be consolidated into one motion with multiple, clearly labeled parts and subparts." M.D. Ga. L. R. 7.1. And every motion filed in a civil proceeding shall be accompanied by a memorandum of law citing supporting authorities. *Id.*

extent it relies on a breach of Section III of the Settlement Agreement; and Plaintiff's Breach of the Implied Covenant claim, at Count IV, to the extent it relies on federal law.

  **SO ORDERED**, this 13th day of June 2024.

          <u>**/s/ W. Louis Sands**</u>
          **W. LOUIS SANDS, SR. JUDGE**
          **UNITED STATES DISTRICT COURT**